**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

-----------------------------------------------X

| | | |
|---|---|---|
| Flexi-Van Leasing, Inc., | : | |
| | : | Civil Action No.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| W.P. Dolle, LLC. | : | |
| | : | (JURY TRIAL DEMANDED) |
| Defendant. | : | |
-----------------------------------------------:

The plaintiff, Flexi-Van Leasing, Inc., by and through its undersigned counsel, would respectfully allege and show unto the Court as follows:

**The Parties**

**1.**    Flexi-Van Leasing, Inc. (hereinafter "Flexi") is a company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

**2.**    That, on information and belief, Defendant, WP Dolle, LLC (hereinafter "Dolle"), is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

**3.**    That Dollie is and at all times relative hereto was acting as an insurance broker and/or insurance agent for Travelers Indemnity Company (hereinafter referred to as "Travelers").

**4.**    That Dollie is and at all times relative hereto was acting as a risk manager for InterStar North America, Inc.

**Jurisdiction and Venue**

**5.**    The loss and claims at issue in this case arise out of an incident that occurred in Charleston County, South Carolina.

6.     Following this incident, an action was filed in the United States District Court in which Flexi was named as a defendant which action was captioned *Charles and Lena Vititoe, Plaintiffs, v. Bridgestone Americas Tire Operations, Inc., Bridgestone Americas, Inc., Bridgestone Industrial Products America, Inc., Accuride Corporation, formerly Firestone Steel Products Division, Accuride De Mexico S.A. de C.V., Flexi-Van Leasing, Inc., Intermodal Bridge Transport, Inc. d/b/a IBT, Defendants, Flexi-Van Leasing, Inc., Defendant/Third Party Plaintiff, v. InterStar North America, Inc., and Container Maintenance Corporation, Third Party Defendants* and which assigned docket number 2:12-CV-01844-DCN (hereinafter referred to as the "South Carolina Action").

7.     That a copy of the Amended Complaint in the South Carolina Action is attached hereto as Exhibit A and incorporated herein by reference.

8.     That the South Carolina Action was resolved in early 2016 by settlement agreement as to all matters except the third-party action as to InterStar, which is still pending.

9.     That the law of New Jersey applies to the determination of this action as it involved the placement of insurance coverage for two corporations whose principal place of business is located in New Jersey.

10.     That jurisdiction in this Court is proper is proper based upon 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

11.     That venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in New Jersey.

**<u>Facts of the South Carolina Action</u>**

12. That on about March 31, 2010, Charles Vititoe, the plaintiff in the South Carolina Action, was injured when a rim assembly on the right rear, inner dual tire of a semi-trailer on which he was working exploded (hereinafter referred to as the "Incident").

13. That following the Incident, Charles and Lena Vititoe, filed the South Carolina Action seeking damages related to the Incident.

14. That in the South Carolina Action, the plaintiffs set forth several causes of action against Flexi, alleging that conduct on the part of it and the other defendants proximately caused Charles Vititoe's injuries by providing a defective or defectively designed rim assembly.

15. That the rim assembly at issue was affixed to a chassis owned by Flexi-Van, then on lease to Zim Integrated Shipping Services Company, Inc. (hereinafter "Zim") pursuant to a long-term Lease Agreement dated February 20, 2003 (hereinafter referred to as the "Lease Agreement").

16. That a copy of the Lease Agreement is attached hereto as Exhibit B and incorporated herein by reference.

17. That on October 1, 2008, Zim contributed the chassis to the South Atlantic Consolidated Chassis Pool (hereinafter "SACP") pursuant to a Master Chassis Contribution Agreement (which written contribution agreements are hereinafter referred to as "MCCA").

18. That a copy of the MCCA is attached hereto as Exhibit C and incorporated herein by reference.

19. That at the time of the Incident, the chassis had been interchanged by the SACP to Intermodal Bridge Transport (hereinafter "IBT") on behalf of SACP member, Hapag Lloyd America (hereinafter "Hapag Lloyd").

20. That a copy of the interchange receipt is attached hereto as Exhibit D and incorporated herein by reference.

21. Flexi was at the time of the Incident the manager of the SACP pursuant to the SOUTH ATLANTIC CONSOLIDATED CHASSIS POOL MANAGEMENT AND AGENCY AGREEMENT dated February 23, 2009 (hereinafter referred to as the ʺManagement Agreementʺ).

22. That a copy of the Management Agreement is attached hereto as Exhibit "F" and incorporated by reference.

23. That as SACP's manager, Flexi was required to enter into the maintenance and repair contracts with maintenance and repair vendors (hereinafter referred to as ʺM&R Vendorsʺ) on the SRCP's behalf, but had no authority to select, vet or terminate any M&R Vendor; SACP instructed Flexi as to which M&R Vendors it was to hire on SACP's behalf and Flexi did as instructed even if it disagreed with SACP's choice of M&R Vendor.

24. That InterStar North America, Inc., (hereinafter referred to as "Interstar") is a Kentucky corporation whose principal place of business is located Florence, Kentucky.

25. That InterStar was an SACP maintenance and repair vendor which performed maintenance and repair work to SACP chassis (hereinafter referred to as an ʺM&R Vendorʺ).

26. That InterStar was an M&R Vendor which performed maintenance and repair work to chassis which needed repair and maintenance work while away from a terminal facility commonly known as an over the road M&R Vendor.

27. That InterStar provides roadside repair services through local subcontractors like Mr. Vititoe.

28.    That at the time of the Incident, InterStar was acting as an M&R Vendor pursuant to a written MASTER MAINTENANCE AND REPAIR AGREEMENT dated September 24, 2009 (hereinafter referred to as the "Agreement").

29.    That the Agreement is attached hereto as Exhibit G and incorporated herein by reference.

30.    That the Agreement provides, among other things, as follows:

R-1    The South Atlantic Consolidated Chassis Pool LLC ('SACP') has established a container chassis pool (the 'Chassis Pool') consisting of container Chassis used primarily for the movement of international shipping containers to be utilized in connection with intermodal activities at the marine and rail terminal facilities operated by terminal operators (the 'Terminal Operators').

R-2    Manager has been hired as manager of the Chassis Pool.

R-3 Manger desires the Vendor to perform certain inspection, maintenance and repair services on its behalf with respect to Chassis in the Chassis Pool.

* * * *

R-5 The following terms shall have the following meanings for the purposes of this Agreement:

* * * *

'Manager' shall initially be Flexi-Van Leasing, Inc. . . .

* * * *

Vendor represents, warrants, and covenants to Manager as follows:

5.1    Vendor has the qualified personnel, equipment, expertise and experience to perform the Services and its obligations under this Agreement. The Services will be performed free from defects in workmanship, and shall in all cases at minimum render the Chassis compliant with the Standards . . ..

* * * *

6.2    <u>Hold Harmless and Indemnification.</u> Vendor shall indemnify, defend and hold harmless SACP . . . Manager . . . their successors and assigns, and their respective affiliates, members, officers,

employees, and agents from and against any and all claims, liabilities, suits, demands, causes of action, damages adjudged due or claims reasonably settled, penalties, fines, costs and expenses (including without limitation reasonable attorney's fees) arising from or in connection with:

(i)     The negligence, gross negligence, or willful misconduct by Vendor or its employees, agents, subcontractors, or any other person or entity acting under Vendor's direction or control (collectively 'Vendor Parties'); and

(ii)    The breach of this Agreement by any one or more of the Vendor Parties (including without limitation a breach of any of Vendor's representations, warranties, and covenants in this Agreement); and

The parties hereto acknowledge and agree that the above indemnitees provide or will provide or will provide substantial benefits upon Manager and the Vendor in connection with the M&R services to be rendered under this Agreement. . . .

6.3 Insurance. Vendor, at its sole cost and expense shall procure and maintain in force during the term of this Agreement the insurance described in **Appendix B** to this Agreement. . . .

\* \* \* \*

10.11 Governing Law, Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, excluding any choice of law or conflict of laws principals that would direct the substantive law of another jurisdiction apply. All suits, claims, and actions, arising from or related to this Agreement may be brought in the United States District Court for the District of New Jersey or any other court of competent jurisdiction; provided, however, that if SACP, Manager, or any Chassis owner, Contributor or User, is made a defendant in another venue in a suit relating to one or more Chassis, SACP, Manager or such other entity may bring an action against Vendor in that venue.

\* \* \* \*

**AMENDMENT NO. 1
TO
SOUTH ATLANTIC CONSOLIDATED CHASIS POOL
MASTER MAINTENANCE AND REPAIR AGREEMENT
(FORM AGREEMENT D)**

THIS AMENDMENT NO.1 to the Master Maintenance and Repair Agreement (the 'Amendment') is entered into effect as of the 24th day of

September, 2009, between FLEXI VAN LEASING, INC. ('Pool Manger') and INTERSTAR NORTH AMERICA, INC. ('Vendor').

WHEREAS, Pool Manager and Vendor desire to amend the Mater Maintenance and Repair Agreement (the 'Agreement'),

NOW, THEREFORE, In consideration of the mutual covenants and conditions in this Amendment and the Agreement, the receipt and sufficiency of which are hereby acknowledged; the parties hereto agree as follows:

1.      The parties hereby acknowledge that Vendor will be performing Services under the Agreement at over the road locations, rather than at a Terminal or Facility. As such the terms of the Agreement do not apply to the extent that they require Vendor to perform work only at a Terminal or Facility or to store or hold Chassis at a Chassis Corral.

2.      Vendor is authorized to subcontract its duties and obligations under the Agreement. Notwithstanding such authority, Vendor shall at all times remain liable to Pool Manager for any breach or non-compliance with the terms of the Agreement by any subcontracted entity.

\* \* \* \*

3.      All other terms and conditions of the Agreement, including but not limited to any insurance and indemnity obligations of Vendor, shall remain unchanged.

\* \* \* \*

## APPENDIX B
## VENDOR'S REQUIRED INSURANCE

1. Commercial General Liability insurance endorsed to cover premises operations, products/completed operations, personal injury, and death and contractual liability and indemnity including, but not limited to, contractual liability coverage insuring against any and all liabilities arising under indemnification provisions set out in this Agreement Additional requirements:

1.1     Limits of liability shall be not less than Ten Million US Dollars ($10,000,000) per occurrence.
1.2     SACP and its Manager shall be additional insureds to the extent of Vendor's indemnity obligation.
1.3     Primary to indemnitees' insurance and any other insurance that may be available to indemnitees.
1.4     Any automobile exclusion shall be deleted for maintenance and repair services on any Chassis under this agreement.

1.5     May not be cancelled or modified without thirty (30) days prior written notice to the additional insureds.

1.6     Occurrence based.

1.7     Maximum deductible: $25,000

\* \* \* \*

4.      . . . Vendor shall provide Manager with certificates of insurance prior to the supply of Services under this Agreement. . . . The insurance policies shall be subject to Managers approval. . . .

**31.**     That in March 2010, InterStar was insured under a written commercial insurance policy, bearing number P-660-218D9617 (hereinafter referred to as the ″Policy″) issued by Travelers Indemnity Company (hereinafter referred to as ″Travelers″).

**32.**     That a copy of the Policy is attached hereto as Exhibit H and incorporated herein by reference.

**33.**     That on September 8, 2009, InterStar sent Dolle a facsimile correspondence in which InterStar enclosed a proposed undated **MASTER MAINTENANCE AND REPAIR AGREEMENT** identical in every respect to the Agreement, except that the proposed undated **MASTER MAINTENANCE AND REPAIR AGREEMENT** was between InterStar and Flexi as manager of The Gulf Consolidated Chassis Pool, LLC, (hereinafter referred to as ″GCCP″) which included **APPENDIX B - VENDOR'S REQUIRED INSURANCE** and in which InterStar requested that Dolle review the insurance requirements in the enclosed **MASTER MAINTENANCE AND REPAIR AGREEMENT** and to advise InterStar if Dolle has ″any potential issues and concerns″ and further advised that InterStar would need a ″certificate of insurance to send with their agreement too.″

**34.**     That a copy of InterStar's September 8, 2009, facsimile correspondence to Dolle and enclosure therewith is attached hereto as Exhibit I and incorporated herein by reference.

35.   That in response to InterStar's September 8, 2009, facsimile correspondence to Dolle, Pam Koenig, Account Executive of Dolle, sent an e-mail to Sandy Holbrook, Director of Administration of InterStar, attaching a copy of the certificate of insurance naming Flexi as manager of GCCP and GCCP as additional insureds under the Policy and explaining that she is "[n]ot sure what item 1.4" of **APPENDIX B - VENDOR'S REQUIRED INSURANCE** to the proposed undated **MASTER MAINTENANCE AND REPAIR AGREEMENT** references and advises Ms. Holbrook that InterStar does "not have an exclusion for" maintenance and repair services on chassis."

36.   That a copy of Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook is attached hereto as Exhibit J and incorporated herein by reference.

37.   That on September 24, 2009, InterStar sent Dolle a facsimile correspondence and an e-mail correspondence in which InterStar enclosed the Agreement and an e-mail to which InterStar attached the Agreement and requested that Dolle issue a certificate of insurance reflecting that Flex as SACP's manager and SACP are additional insured's under the Policy.

38.   That a copy of InterStar's September 24, 2009, facsimile correspondence and e-mail correspondence sent to Dolle is attached hereto as Exhibit K and incorporated herein by reference.

39.   That in response to InterStar's September 24, 2009, facsimile correspondence to Dolle, Karen A. Hampton of Dolle, sent an e-mail to John Shortridge, President of Administration of InterStar, attaching a copy of the certificate of insurance naming Flexi as manager of SACP and SACP as additional insureds under the Policy and explaining that she is "[n]ot sure what item 1.4" of **APPENDIX B - VENDOR'S REQUIRED INSURANCE** to the

proposed undated **MASTER MAINTENANCE AND REPAIR AGREEMENT**
references and advises Mr. Shortridge that InterStar does ″not have an exclusion for″
maintenance and repair services on chassis.″

40.     That a copy of Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge is attached
hereto as Exhibit L and incorporated herein by reference.

41.     That in accordance with industry standards, Dolle issued a certificate of insurance dated
September 25, 2009, (hereinafter referred to as the ″Certificate″) which states that Flexi,
SACP and CCM are included as additional insured [*sic*] under the general liability when
required by written contract.″

42.     That the Certificate further states that ″[g]eneral liability is primary and non-contributory
when required by written contract.″

43.     That the Certificate notes in its lower left corner under the heading ″CERTIFICATE
HOLDER″ that it was delivered to Flexi as manager of SACP at Flexi's headquarters
located at ″250 Monroe Avenue, Kenilworth, NJ 07037.″

44.     That in its lower right hand corner just to the right of the box entitled ″CERTIFICATE
HOLDER″ under the heading ″CANCELLATION″ the Certificate provides in pertinent
part that ″SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED
BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL
ENDEVOR TO MAIL  30 DAYS WRITTN NOTICE TO THE CERTIFICATE HOLDER
NAMED TO THE LEFT. . . .″

45.     The Certificate too states in the section entitled ″DESCRIPTION OF OPERATIONS /
LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS″
that ″Flexi-Van Leasing, Inc., SACP (South Atlantic Chassis Poole) and CCM

(Consolidated Chassis Management) are included as additional insured under the general liability when required by written contract, General liability is primary and non-contributory when required by written contract."

46. That a copy of the Certificate is attached hereto as Exhibit M and incorporated herein by reference.

47. That in accordance with industry standards, Dolle sent only the Certificate to Flexi and CCM but did not send them a copy of the Policy.

48. That the Policy provides in relevant part in Sections I(1)(a), (b)(1), (2)(g), II(1)(d), V(2) and (9) found on pages 1 of 16, 2 of 16, 4 of 16, 8 of 16, 12 of 16 and 13 of 16 of its **COMMERICAL GENERAL LIABILITY COVERAGE FORM**" (form CG 00 01 10 01) which forms a part of the Policy as follows:

> Throughout this policy the words "you" and "your"" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", us and "our" refer to the company providing this insurance.

> The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

* * * *

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

* * * *

  **b.**  This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

\* \* \* \*

**2.      Exclusions**

This insurance does not apply to:

\* \* \* \*

**g.      Aircraft, Auto Or Watercraft**

'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'

This exclusion applies even if the against any insured allege negligence or other wrongdoing in the supervision, hiring, employment training or of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured.

\* \* \* \*

**SECTION II – WHO IS AN INSURED**

**1.**      If you are designated in the Declarations as:

\* \* \* \*

**d.**      An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .

\* \* \* \*

**SECTION V – DEFINITIONS**

**2.**      'Auto' means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. . . .

49.     That the Policy further provides in relevant part in section 1(a) found on pages 1 of 1 of its

"**LIMITATION OF COVERAGE TERRITORY**" (form CG D2 07 11 03) which forms

a part of the Policy as follows:

> "Coverage territory" means:
>
> > a.      The United States of America (including its territories and possessions), Puerto Rico and Canada.

50.     That, on information and belief, the Policy was never endorsed to eliminate the exclusion

in Section I(2)(g) for maintenance and repair services rendered to chassis under the

Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED**

**INSURANCE.**

51.     That Flexi tendered its defense in the South Carolina Action to InterStar and Travelers on

December 13, 2010.

52.     That on December 29, 2010, Travelers accepted Flexi's tender by letter of J. David Waugh

which states in relevant part:

> We are in receipt of a claim and Temporary Restraining Order filed by Charles & Lena Vititoe which does show Flexi-Van as a defendant. Additionally, we have a letter from you placing us on notice of this matter and tendering the claim to us on behalf of Flexi-Van.
>
> We are in the process of investigating the matter and reviewing material in order to determine whether there is any coverage under the policies of insurance issued to InterStar North America, Inc. and whether this coverage might apply to Flexi-Van Leasing. Until this has been completed, Travelers is not in a position to determine whether or not there might be any coverage in this matter and if there is any obligation under the policy.
>
> For now, we have decided to investigate this matter on your behalf. . . . We are also providing you with defense counsel while this investigation takes place. Mark Wall . . . has been retained. . . . You will hear further . . . with respect to the handling of the claim. Any matters. pertaining to coverage under the policy should be directed to me.

Having established a claim file and conducting an investigation into this matter, Travelers does not waive any rights or defenses that might be available. Nor does this expand the duties owed by the Travelers under the contract of insurance issued to the policyholder. Travelers specifically reserves all its rights, including but not limited to, those rights and defenses under the contracts of insurance.

53.    That a copy of Travelers' December 29, 2010, letter is attached hereto as Exhibit N and incorporated herein by reference.

54.    That Travelers' December 29, 2010, letter contains no coverage disclaimer.

55.    That Travelers' December 29, 2010, letter reserves no rights based on any specific claim or possibility of noncoverage as to either defense or indemnity.

56.    That no position adverse to Flexi's interests is asserted or even suggested in Travelers' December 29, 2010, letter as it contains no suggestion or hint that Flexi's claim may not be covered.

57.    That Travelers' December 29, 2010, letter does not constitute a valid nonwaiver agreement.

58.    That Travelers' December 29, 2010, letter does not advise Flexi that it is giving up valuable rights in respect of control of investigation and negotiations for settlement, as well as, later, of the defense of any action instituted by the claimant.

59.    That Travelers' December 29, 2010, letter, likewise, fails to fairly inform Flexi that it was free to accept or reject Travelers' intended course of action or to advise Flexi it could choose its own counsel and take over the investigation of the South Carolina Action.

60.    That the South Carolina Action was filed May 24, 2012.

61.    That Flexi promptly forwarded the Complaint in the South Carolina Action to Travelers and Mr. Wall.

62.    That after Travelers was made aware that the South Carolina Action was filed, Michael K, Miller, CPCU, a Major Case Specialist for Travelers, informed Thomas A. Cizin, CPCU,

of Flexi by e-mail dated June 15, 2012, that Mr. Wall continued to be retained as Flexi's defense attorney, subject to the reservation of rights, such as they were, set forth in Travelers' December 29, 2010, letter.

63. That a copy of Mr. Miller's June 15, 2012, e-mail is attached hereto as Exhibit O and incorporated herein by reference.

64. That nowhere in Mr. Miller's June 15, 2012, e-mail does Travelers disclaim coverage, disclaim coverage for any specific claim asserted in the South Carolina Action or reserve any rights based on any specific possibility of noncoverage as to either defense or indemnity.

65. That the e-mail incorporates the reservations set forth in the December 29, 2010, letter.

66. That like its December 29, 2010, letter, Travelers' June 15, 2012, e-mail neither asserts nor suggests a position adverse to Flexi's interests as it also contains no suggestion or hint that the Policy might not provide coverage to Flexi for the South Carolina Action.

67. That Travelers June 15, 2012, e-mail does not constitute a valid nonwaiver agreement.

68. That Travelers June 15, 2012, e-mail fails to advise Flexi that it is giving up valuable rights in respect of control of investigation and negotiations for settlement, as well as, later, of the defense of any action instituted by the claimant.

69. That Travelers' June 15, 2012, e-mail fails to fairly inform Flexi that it was free to accept or reject Travelers' intended course of action or to advise Flexi that it could choose its own counsel and take over the investigation of the South Carolina Action.

70. That after Flexi was served with the Complaint, Mr. Wall took several actions in the South Carolina Action on Flexi's behalf such as removing the South Carolina Action to Federal

Court, filing an Answer, filing answers to Local Rule 26.01, D.S.C., interrogatories and participating in the in the Fed.R.Civ.P. 26(f) conference.

**71.**   That the Complaint in the South Carolina Action was amended on August 23, 2012.

**72.**   That Mr. Wall answered the Amended Complaint on August 29, 2012.

**73.**   That beyond the foregoing actions, Mr. Wall did little else in connection with his representation of Flexi following the initial flurry of activity following service of the complaint, and neither Mr. Wall nor Travelers engaged in any investigation or discovery.

**74.**   That on March 27, 2013 - more than two years after Flexi tendered its claim for defense and indemnity under the Policy to Travelers, more than ten months after the South Carolina Action was filed and seven months after the Complaint in the South Carolina Action was amended – Mr. Miller sent Flexi a supplemental reservation of rights letter substantially expanding the depth and breadth of its reservation of rights – to the extent it had in fact reserved its rights before – and for the first time expressed Travelers' intent to disclaim coverage to Flexi.

**75.**   That a copy of Travelers' December 29, 2010, letter is attached hereto as Exhibit N and incorporated herein by reference.

**76.**   That, Travelers' March 27, 2013, letter states in part:

> As you know, we have agreed to defend Flexi-Van in the South Carolina litigation filed by Charles and Lena Vititoe. This defense is being provided under a reservation of rights and according to the terms of the agreement between Interstar and Flexi-Van.
>
> This letter shall serve as The Travelers Casualty Insurance Company of America (hereinafter 'Travelers') position in light of the complaint received and the coverage afforded under policy number 6602180K9617 (hereinafter 'Policy') issued to Interstar North America Inc (hereinafter 'Interstar').

>In order to explain the coverage issues, the Travelers must discuss the claimant's allegations.

77.  That after quoting various provisions of the Policy, Travelers' March 27, 2013, letter goes on to state in pertinent part:

>As per the agreement between Interstar and Flexi-Van there is no responsibility to cover injuries or damages due to the independent acts or omissions of Flexi-Van.  If the plaintiff should prove their injuries or damages resulted from the acts or omissions of Flexi-Van that would not be covered by this policy. The agreement further states Interstar would only provide for defense and indemnity from claims that arise from or in connection with the negligence, gross negligence, or willful misconduct of Interstar. If the plaintiff can prove negligence, gross negligence or willful misconduct on Interstar then the resulting claim would be subject to the policy before indemnity could be considered.

>This incident appears to come about from an **'occurrence'** causing **'bodily injury'**.  As shown above, the Policy contains an exclusion that appears relevant to this fact scenario. Exclusion g. **Aircraft, Auto Or Watercraft** says coverage is precluded for any auto, 'owned or operated by or rented or loaned to any insured.' It is our understanding Flexi-Van is an owner and fleet manager for the semi-trailer in question. A semi-trailer is included in the definition of **'auto'**.

>As you know, we have retained Mark Wall with the law Firm of Wall Templeton to defend Flexi-Van. We are hopeful it will be shown there was no negligence or culpability on Flexi-Van or Interstar for the injuries sustained by Mr. Vititoe. However, if there is a judgment against Flexi-Van we may be unable to provide indemnity for this matter. If you have not already done so, we urge you to notify your own liability carrier(s) of this matter promptly and we will be happy to work with them in this case.

>* * * *

>Travelers reserves its right to by [*sic*] raising additional defenses to coverage and to assert all defenses based upon law or based upon the terms, conditions, exclusions and limitations of the policies in any future litigation or other proceeding pertaining to insurance coverage for this matter. In addition, the inclusion of certain policy provisions and defenses in this letter should not be deemed or construed as a waiver or relinquishment by Travelers of any other rights or defenses.

78.   That it was not until March 27, 2013, that Travelers first took the position that the Policy does not "cover injuries or damages" caused by Flexi's "independent acts or omissions."

79.   That it was also not until March 27, 2013, that Travelers asserted a possibility of noncoverage based on Exclusion g.

80.   That in so doing, Travelers effectively denied coverage for the South Carolina Action.

81.   That exclusion g essentially renders all coverage under the Policy meaningless as to Flexi and SACP as virtually every potential claim Flexi and/or SACP would or could ever make under the Policy would arise out of chassis owned, operated or loaned to Flexi and/or SACP since that is their respective businesses, and InterStar was a vendor hired by them to maintain and repair their chassis.

82.   That exclusion g, therefore, excludes the very risk Flexi and SACP contemplated would be covered by the Policy when they entered into the Agreement.

83.   That Travelers March 27, 2013, letter does not constitute a valid nonwaiver agreement.

84.   That nowhere does Travelers advise Flexi that it is giving up "valuable rights in respect of control of investigation and negotiations for settlement, as well as, later, of the defense of any action instituted by the claimant."

85.   That Travelers' December 29, 2010, letter fails to fairly inform Flexi that it was free to accept or reject Travelers' intended course of action or to advise Flexi that it could choose its own counsel and take over the investigation of Mr. and Mrs. Vititoes' claim.

86.   That after receiving Travelers' March 27, 2013, letter, rather than sit silently by and allow Travelers to continue controlling the defense, Flexi raise the conflict of interest issue and insisted - as it had a right to do - that it be allowed to retain its own counsel at Travelers' expense.

87.     That despite the fact that a per se conflict existed between Flexi and Travelers and Mr. Wall by virtue of Travelers' March 27, 2013, reservation of rights letter, Travelers refused to permit Flexi to select its own counsel.

88.     That Flexi terminated Mr. Walls' services and selected new counsel.

89.     That Travelers, thereafter wrongfully withdrew its defense of Flexi.

90.     That from December 29, 2010, until June 18, 2013, Travelers and Mr. Wall assumed complete and total control over the handling and investigation of Flexi's claim and its defense in the South Carolina Action.

91.     That over time, Flexi began to become uneasy and concerned with the manner in which Travelers and Mr. Wall were handling its claim and its defense in the South Carolina Action.

92.     That one concern was that during the two plus year period Travelers and Mr. Wall handled Flexi's claim and defense neither investigated the facts in the South Carolina Action even though it was clearly a complex case with multiple parties involving serious permanent brain injuries.

93.     That for instance, as of late June 2013, Flexi had not been provided with any information regarding the exact nature and extent of Mr. Vititoe's injuries or damages or of his then current condition, as apparently Travelers and Mr. Wall had not investigated the same, even though it was known to them that Mr. Vititoe had been in a coma for seventeen days during which he was feed through a feeding tube and that Mr. Vititoe had been an inpatient at the Shepard Clinic.

94.     That another concern was that Travelers and Mr. Wall failed to keep Flexi abreast of what was taking place in the litigation.

95.    That among other things relative to Flexi's concern in this regard:

    (a)    Flexi never received report letters or routine updates on the matter unless it made a specific inquiry;

    (b)    Flexi inquired of Mr. Wall as to whether the case could be removed to federal court, which Mr. Wall subsequently did on July 3, 2012, without informing Flexi (Flexi first learned that the case had been removed to this Court on June 19, 2013);

    (c)    Flexi was not made aware that the complaint in the South Carolina Action had been amended or that it had answered the same;

    (d)    Flexi never received any documents or pleadings in the South Carolina Action until June 19, 2013, and June 20, 2013, and then only in response to Flexi's request that it be provided with the same;

    (e)    Neither Travelers nor Mr. Walled investigated whether Flexi had any potential claims against any third parties for indemnification arising out of the Incident; and,

    (f)    Neither Travelers or Mr. Wall advised Flexi or worked with it concerning any potential defenses, counterclaims, cross-claims or third-party actions which would be appropriate to Flexi's defense to the South Carolina Action.

96.    That because of the nature of Travelers' March 27, 2013, reservation of rights letter, particularly Travelers' reliance on exclusion g, it became an essential and necessary part of Flexi's defense to the South Carolina Action to pursue CMC and InterStar for indemnification since the March 27, 2013, reservation of rights letter gave rise to a real possibility that Flexi would not be covered under the Policy if a judgment was rendered against it in the South Carolina Action.

97.    That Flexi instructed Mr. Wall to prepare and file a third-party action against InterStar.

98.     That at first, Mr. Wall attempted to dissuade Flexi from making a claim against InterStar on the grounds that Mr. and Mrs. Vititoe would bring InterStar into the main action, which never happened.

99.     That Flexi gave Mr. Wall a May 16, 2013, deadline in which to file the action against InterStar.

100.    That May 16, 2013, came and went, but Mr. Wall failed to file a third-party action against InterStar.

101.    That Flexi contacted Mr. Wall on May 16, 2013, and insisted that he file a third-party action against InterStar, but he refused explaining that Travelers had not directed him to file a third-party action against InterStar and that Travelers would not pay him to do so.

102.    That Mr. Wall further told Flexi on several occasions that he took his instructions from Travelers, not Flexi.

103.    That during the course of the next several weeks Flexi continued to insist that Mr. Wall initiate a third-party action against InterStar and Mr. Wall continued to refuse to do so on the grounds that Travelers had not instructed him to do so and he took his instructions from Travelers not Flexi.

104.    That Mr. Miller too told Flexi that Mr. Wall takes his instructions from Travelers, Not Flexi.

105.    That as a result of the foregoing, in late June 2013, Flexi advised Mr. Wall that he no longer represented it in the South Carolina Action and advised him that it had arranged for substitute counsel.

106.    That despite this, Mr. Wall initially refused to accept Flexi's termination of his services claiming that he had not received instructions from Travelers to allow the substitution of counsel.

107.    That as late as June 28, 2012, Mr. Wall had still not withdrawn as Flexi's counsel and in an e-mail to current counsel stated that "pursuant to my duty to both clients, Flexi van [*sic*] and Travelers, I am taking my instructions from both."

108.    That shortly thereafter, on July17, 2013, Mr. Wall withdrew as Flexi's counsel.

109.    That Travelers assumed complete and total control over the investigation and handling of the claim for a period of two and a half years beginning December 29, 2010, maintained complete and total control over Flexi's defense to the Underlying Action for over a year following its filing all to the exclusion of Flexi therefrom.

110.    That once Travelers reserved the rights it reserved in its March 27, 2013, reservation of rights letter, Travelers sought to set up a situation where it could completely control Flexi's defense in the Underlying Action and potentially leave Flexi to respond to the judgment alone had the trial of the Underlying Action resulted in a judgment against Flexi.

111.    That Travelers failed to secure an effective nonwaiver agreement.

112.    That in reserving its rights based on Exclusion g, Travelers essentially denied Flexi coverage under the Policy.

113.    That Travelers March 27, 2013, letter makes clear that a trial in the Underlying Action, had one taken place, would have "left the question of coverage unresolved."

114.    That given the rights reserved by Travelers in the March 27, 2013, letter, the Underlying Action could have been defended by Travelers as to prejudice Flexi upon the issue of coverage.

115. That as Travelers reserved its right to disclaim coverage for liability as to the "independent acts or omissions of Flexi" as opposed to the negligent acts of InterStar, Travelers set up a potential result at trial, had there been one, which would have benefited Travelers at the expense of Flexi.

116. That a per se conflict arose between Travelers and Flexi by virtue of Travelers' reservation of its rights in its March 27, 2013, letter.

117. That Flexi was entitled to select its own counsel to represent it in the Underlying Action and Travelers is required to pay for Flexi's counsel.

118. That despite Flexi' right to select its own counsel to represent it in the Underlying Action Travelers refused to allow it to do so and ultimately withdrew Flexi's defense.

119. That Dolle knew or had reason to know that Flexi was an intended beneficiary under the Policy.

120. That it was reasonably foreseeable to Dolle that failure to properly endorse the Policy to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE** would effectively void all coverage under the Policy as to Flexi.

121. That on April 24, 2015, Flexi initiated an action against Travelers in the United States District Court for the District of South Carolina captioned *Flexi-Van Leasing, Inc. v. The Travelers Indemnity Company* and assigned 2:15-cv-01787-DNC by the Clerk of the United States District Court for the District of South Carolina (hereinafter referred to as the "Travelers Action").

122. That in connection with the Travelers' Action on August 22, 2015, Flexi served upon Dolle a subpoena.

123. That Dolle complied with the subpoena served upon it on September 22, 2015.

124. That the documents subpoenaed from Dolle were received by Flexi several days after September 22, 2015.

125. That it was not until Flexi received the documents subpoenaed from Dolle that it first became aware that Dolle failed to have the Policy properly endorsed.

126. That prior to receiving Travelers' March 27, 2013, reservation of its rights letter, Flexi had no reason to believe or expect that the Policy had not been properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE**.

127. That prior to receiving Travelers' March 27, 2013, reservation of its rights letter, Flexi could not have discovered in the exercise of reasonable diligence that the Policy had not been properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE**.

128. That prior to receiving the documents subpoenaed from Dolle that Flexi first became aware that Dolle failed to have the Policy properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE**.

129. That prior to receiving the documents subpoenaed from Dolle, Flexi could not have discovered in the exercise of reasonable diligence that Dolle failed to have the Policy

properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement as required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE**.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
<u>**(NEGLIGENT PROCUREMENT)**</u>

130.    That each and every relevant and consistent allegation set forth in Paragraph 1 through Paragraph 129 set forth hereinabove is incorporated herein as if fully set forth herein verbatim.

131.    That Dolle, as an insurance broker or agent owed a duty of due care to Flexi, as an additional insured under the Policy, to act with reasonable skill and diligence in performing the services of a broker and/or agent.

132.    That, as an insurance broker or agent, Dolle owed a duty of care not only to InterStar, as the insured who paid the premium and with whom Dolle contracted, but to all other parties found within the zone of harm emanating from Dolle's actions as well.

133.    That Flexi was a foreseeable injured.

134.    That Dolle negligently, willfully, wantonly and recklessly breached the duty of due care it owed to Flexi in the following particulars, to-wit:

a.    In failing to procure the insurance required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE** in that Dolle failed to have the Policy properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement;

b.    In securing a policy that is both void and materially deficient;

c.    In that the Policy does not provide the coverage Dolly undertook to supply;

**d.**     In failing to act in accordance with the standard of conduct for insurance agents and brokers performing such services and,

**d.**     In failing to exercise due care under the circumstances then and there prevailing.

135.   That as a direct and proximate cause of Dolle's negligent, willful, wanton and reckless conduct complained of hereinabove, Flexi has sustained damages in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action and in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action.

136.   That as a direct and proximate cause of Dolle's negligent, willful, wanton and reckless conduct complained of hereinabove, Flexi is entitled to entry of judgment in its favor against Dolle in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action and for punitive damages in an appropriate amount.

### FOR A SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT)

137.   That each and every relevant and consistent allegation set forth in Paragraph 1 through Paragraph 136 set forth hereinabove is incorporated herein as if fully set forth herein verbatim.

138.   That Flexi was an intended third-party beneficiary under the contract for procurement of coverage for Flexi under the Policy as an additional insured.

139.   That Dolle breached the contract for procurement of coverage for Flexi under the Policy as an additional insured by unjustifiably failing to procure the insurance required by Section 1.4 of **APPENDIX B, VENDOR'S REQUIRED INSURANCE** in failing to have the

Policy properly endorsed to eliminate the exclusion in Section I(2)(g) for maintenance and repair services rendered to chassis under the Agreement.

140.   That as a direct and proximate cause of Dolle's unjustified breached of the contract for procurement of coverage for Flexi under the Policy complained of hereinabove, Flexi has sustained damages in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action and in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action.

141.   That as a direct and proximate cause of Dolle's unjustified breached of the contract for procurement of coverage for Flexi under the Policy complained of hereinabove, Flexi is entitled to entry of judgment in its favor against Dolle in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action and in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action.

**FOR A THIRD CAUSE OF ACTION**
**(NEGLIGENT MISREPRESENTATION)**

142.   That each and every relevant and consistent allegation set forth in Paragraph 1 through Paragraph 141 set forth hereinabove is incorporated herein as if fully set forth herein verbatim.

143.   That in Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook (Exhibit J) and again in Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge (Exhibit L), supplied false information to InterStar, specifically, that the Policy does not contain an exclusion for maintenance and repair services rendered to chassis under the Agreement.

144. That the false information supplied by Dolle to InterStar in Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook (Exhibit J) and again in Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge (Exhibit L), was made during the course of Dolle's business, profession or employment, or in a transaction in which it had a pecuniary interest as Dolle was compensated for its efforts in assisting InterStar in connection with the Policy and endorsements thereto.

145. That the false information supplied by Dolle to InterStar in Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook (Exhibit J) and again in Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge (Exhibit L), was made for the guidance of InterStar and Flexi in their business transactions in that had InterStar been made aware that the Policy did, in fact, contain an exclusion for maintenance and repair services rendered to chassis under the Agreement, it could have addressed the situation and obtained a policy which did not contain an exclusion for maintenance and repair services rendered to chassis under the Agreement.

146. That as a direct and proximate consequence of Flerxi's and InterStar's justifiable reliance upon the false information supplied by Dolle to InterStar in Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook (Exhibit J) and again in Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge (Exhibit L), Flexi suffered pecuniary loss in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action and in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action.

147. That Flexi is a person or one of a limited group of persons for whose benefit and guidance Dolle intended to supply the information or knews that InterStar intended to supply it.

148.   That the pecuniary loss suffered by Flexi – specifically the cost of settling the South Carolina Action, the cost of attorney fees and litigation costs incurred in defending the South Carolina Action and the cost of attorney fees and litigation costs incurred in prosecuting this action - as a direct and proximate consequence of Flerxi's and InterStar's justifiable reliance upon the false information supplied by Dolle to InterStar in Ms. Koenig's September 8, 2019, e-mail to Ms. Holbrook (Exhibit J) and again in Ms. Hampton's September 24, 2019, e-mail to Mr. Shortridge (Exhibit L), arises directly out of the transaction in which Dolle supplied the false information.

149.   That Dolle was negligent, willful, wanton and reckless in obtaining and/or communicating the information regarding the existence or non-existence of an exclusion in the Policy for maintenance and repair services rendered to chassis under the Agreement.

150.   That as a direct and proximate cause of Dolle's negligent, willful, wanton and reckless conduct complained of hereinabove, Flexi is entitled to entry of judgment in its favor against Dolle in an amount equal to the cost of settling the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in defending the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred in prosecuting this action and for punitive damages in an appropriate amount.

**WHEREFORE**, Plaintiff, Flexi-Van Leasing, Inc., prays that judgment in its favor against Defendant, WP Dolle, LLC, in an amount equal to Plaintiff, Flexi-Van Leasing, Inc.'s, contribution to the settlement of the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred by Plaintiff, Flexi-Van Leasing, Inc., in defending the South Carolina Action, in an amount equal to the cost of attorney fees and litigation costs incurred by Plaintiff, Flexi-Van Leasing, Inc., in prosecuting this action, for punitive damages in an

appropriate amount and for any such other and further relief as this court shall deem just and proper.

Dated:  February 6, 2018                    s/ *Matthew L. Kislak*_____
                                            Matthew L. Kislak, Esq.
                                            **Flicker, Garelick & Associates, LLP**
                                            250 Pehle Avenue, Suite 200
                                            Saddle Brook, NJ 07663
                                            Tel: (212) 319-5240
                                            Fax: (212) 888-5271
                                            e-mail: MKislak@flickergarelick.com
                                            *Attorneys for Plaintiff, Flexi-Van Leasing, Inc.*

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues so triable.

Dated:  February 6, 2018

s/ *Matthew L. Kislak*

Matthew L. Kislak, Esq.
**Flicker, Garelick & Associates, LLP**
250 Pehle Avenue, Suite 200
Saddle Brook, NJ 07663
Tel: (212) 319-5240
Fax: (212) 888-5271
e-mail: MKislak@flickergarelick.com
*Attorneys for Plaintiff, Flexi-Van Leasing, Inc.*